

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 NOV 24  AM 7: 51

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70236-0-I |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| ROBERT A. MERINO, | ) | UNPUBLISHED OPINION |
| Appellant. | ) ) ) | FILED: November 24, 2014 |

BECKER, J. — A criminal defendant effectively waives his right to counsel if the court makes him aware of the dangers and disadvantages of self-representation and he persists in his request to appear pro se. The record in this case shows the appellant's decision to represent himself was voluntarily and knowingly made.

Appellant Robert A. Merino was charged with two counts of rape of a child in the first degree-domestic violence, one count of rape of a child in the second degree, and one count of child molestation in the first degree-domestic violence, arising out of events that occurred between January 2005 and July 2008.

Trial was set for March 6, 2013. In February 2013, Merino requested to proceed pro se. The trial court engaged in the following colloquy with him on February 21, 2012, to determine whether he knowingly and voluntarily waived his right to counsel.

MR. MERINO: Good morning. Yes, I'd like to go pro se, your Honor.

THE COURT: All right, Mr. Merino. When is the trial date?

MR. WYNNE: The current trial date is the --

THE COURT: I think it's March 6th, so it's right around the comer; is that correct?

MR. WYNNE: Yes. I was thinking it was the 11th.

THE COURT: Okay. And, Mr. Merino, what kind of charge is this? Can you tell me?

MR. MERINO: The charges?

THE COURT: Yeah. What's the charge?

MR. MERINO: It's rape of a Child 1, and rape of a Child 2.

THE COURT: Okay. And you understand how serious those charges are?

MR. MERINO: Yes.

THE COURT: And you understand that you have a trial date in a week and a half, two weeks at most?

MR. MERINO: Yes.

THE COURT: All right. So can you help me understand how you plan on representing yourself?

MR. MERINO: Well, I just -- I just need my information is all, my discovery. And I'm innocent of these charges. I just need to go to court. I just need to go to trial and state my case.

THE COURT: Okay. But do you understand what -- have you ever been to trial before?

MR. MERINO: Yes.

THE COURT: All right. So do you understand how to select the jury?

MR. MERINO: Yes.

THE COURT: And how do you do that?

MR. MERINO: Well, I've been selected for a juror before, so I know the process as far as the Prosecutor and the Defense going through that.

THE COURT: Do you understand that nobody will be there to help you?

MR. MERINO: Yes.

THE COURT: Do you understand that if you go to trial, if you actually represent yourself, you're going to be responsible for the Rules of Evidence? Are you familiar with those?

MR. MERINO: A little bit, yes. I've been going to the law library and studying a little bit on that.

THE COURT: Okay. So I've been doing this for a number of years and I'm here to tell you, I still don't understand all of the Rules of Evidence. You need to understand you're going to be held accountable, just as if you were an attorney. Do you understand that?

2

MR. MERINO: Yes, ma'am.

THE COURT: You will also be held accountable for all of the Washington State Court Rules. Do you have any questions about that?

MR. MERINO: No.

THE COURT: I need for you to understand something. The Court of Appeals and the Supreme Court has told us that if you really want to go to trial on your own, even though I think it is the silliest thing that you could do in your entire life, I have to let you do that. So you need to understand if I decide to let you do that even though I know, in my opinion at least --

MR. MERINO: Yes.

THE COURT: -- you will not have a clue what to do, and it will be to your disadvantage and you're looking at some very, very serious charges and some decent time. So you need to understand --

MR. MERINO: I understand.

THE COURT: -- I think you're being very foolish.

MR. MERINO: I understand. Thank you.

The court then asked the prosecutor to "lay out all of the charges and lay out what the maximum penalties are." The prosecutor, Mr. Wynne, did so.

MR. WYNNE: . . . So, Mr. Merino, I'm going to go through a couple of things. If you could just answer out loud, this is all being recorded.

. . . .

MR. WYNNE: Do you understand that you have the right to be represented by a lawyer and if you cannot afford a lawyer, one will be appointed to you? You actually have lawyers right now, but do you understand that you have the right to have appointed counsel?

MR. MERINO: Yes. Yes.

MR. WYNNE: Do you understand that you have a Constitutional right to represent yourself as well?

MR. MERINO: Yes.

MR. WYNNE: Do you understand that you're charged currently in Count 1 with rape of a child in the first degree, and in Count 2 with rape of a child in the second degree?

MR. MERINO: Yes.

MR. WYNNE: Do you understand that the maximum sentence for each of those counts is life and imprisonment and a $50,000 fine on each count?

MR. MERINO: Yes.

3

MR. WYNNE: Do you understand that an attorney would represent you and speak for you on your behalf in court?

MR. MERINO: Yes.

MR. WYNNE: Do you understand that an attorney would advise you as to your legal rights and options?

MR. MERINO: Yes.

MR. WYNNE: Do you understand that an attorney will explain and assist you with the legal and court procedures?

MR. MERINO: Yes.

MR. WYNNE: Do you understand that an attorney would investigate and explore possible defenses to the charges against you that may or may not be readily apparent to you in your current state?

MR. MERINO: Yes.

MR. WYNNE: Do you understand that an attorney will prepare and conduct your defense at any motion hearing or trial?

MR. MERINO: Yes.

MR. WYNNE: Do you understand that if you represent yourself, the Judge cannot be your attorney and cannot give you any legal advice.

MR. MERINO: Yes.

MR. WYNNE: Do you understand that if you represent yourself the prosecuting attorney, as represented by me a deputy prosecuting attorney, cannot be your attorney and cannot give you legal advice?

MR. MERINO: Yes, I understand that.

MR. WYNNE: Do you understand that the Judge, if you represent yourself, the Judge, myself and court personnel are not required to explain court procedures or the law to you?

MR. MERINO: I understand.

MR. WYNNE: Do you understand that if you represent yourself, you'll be required to follow all legal rules, procedures, including the Rules of Evidence?

MR. MERINO: Yes.

MR. WYNNE: Do you understand that if you represent yourself, you have the right to remain silent; but if you do decide to testify on your on behalf, you will be required to present your testimony by asking questions to yourself?

MR. MERINO: Yeah.

MR. WYNNE: And what that means is you can't just sit up on the stand and just say this is what happened. You actually have to ask questions and answer them.

MR. MERINO: I understand, yes.

MR. WYNNE: Do you understand that if you represent yourself, the Judge is not required to provide you with an attorney as a legal advisor or standby counsel?

MR. MERINO: I understand.

MR. WYNNE: Do you understand what standby counsel is?

MR. MERINO: Like an assistant or a full counsel.

MR. WYNNE: Do you understand that if you represent yourself and you later change your mind and decide that you do want an attorney to represent you, the Judge may require you to continue to represent yourself without the assistance of a lawyer?

MR. MERINO: Yes.

MR. WYNNE: Just describe for us, if you will, any legal training and experience that you have prior to representing yourself here.

MR. MERINO: I've had two or three cases with the Hernandez family that I represented myself, and I came out successful.

MR. WYNNE: So you represented yourself in Family Court?

MR. MERINO: Yes, Family Court.

MR. WYNNE: Any criminal experience?

MR. MERINO: No.

MR. WYNNE: Are you making your decision to represent yourself knowingly and voluntarily?

MR. MERINO: Yes.

MR. WYNNE: Do you feel that you have all the knowledge that you need to make this decision?

MR. MERINO: I think I'll be fine.

MR. WYNNE: No, that's a different question. Do you feel like you have all the knowledge that you need to make this decision here today?

MR. MERINO: Oh, yes. Uh-hum.

MR. WYNNE: And is anyone pressuring you in any way, threatening you in any way to make you proceed pro se?

MR. MERINO: Just the circumstances.

MR. WYNNE: And so by the circumstances, meaning that you're currently in custody?

MR. MERINO: Yes, and just by counsel and just the way things have been going in the last 15 months.

MR. WYNNE: Okay. So I have to follow-up on that or maybe the Court wishes to follow-up on that in terms of whether or not you're being pressured into doing this --

MR. MERINO: I'm not being pressured.

MR. WYNNE: -- he's indicated that "by counsel."

MR. MERINO: I'm not being pressured.

THE COURT: Well, I have to say I'm watching Mr. Merino, and he seems very calm and he seems very intent on moving forward with this.

MR. MERINO: Thank you.

THE COURT: Is that correct?

MR. MERINO: Yes.

THE COURT: All right. Counsel, did you want to proceed?

MR. WYNNE: Yes, your Honor, I do. I'm just making sure, one final thing.

Mr. Merino, I have in my hand a two-page document entitled Waiver of Counsel. Have you read through this document yourself?

MR. MERINO: Yes, I have.

MR. WYNNE: And have you read through it with your attorney, Mr. Schmidt?

MR. MERINO: Yes.

MR. WYNNE: Did he answer any questions that you may have had about this document?

MR. MERINO: I didn't have any questions.

MR. WYNNE: Did you have an opportunity to ask any questions about this?

MR. MERINO: Yeah.

MR. WYNNE: You had that opportunity?

MR. MERINO: Yes.

MR. WYNNE: Okay. I'm just confirming that. Is it your decision, at this point, you want to proceed pro se and represent yourself?

MR. MERINO: Yes.

MR. WYNNE: Your Honor, the State doesn't have any further colloquy necessary.

The court granted Merino's request to proceed pro se, finding that he understood the risks of self-representation.

THE COURT: Mr. Merino, so am I hearing you correctly, that you understand that you could be found guilty, the maximum penalty is to life and it is still your desire to represent yourself --

MR. MERINO: Yes.

THE COURT: -- because you're nodding in the affirmative --

MR. MERINO: Yes, ma'am.

THE COURT: -- and it appears to me that you have absolutely no hesitancy whatsoever?

MR. MERINO: No.

THE COURT: All right. Well, I think I've already suggested to you that I think it's unwise. I would wish that you would stay with counsel. On the other hand, as I stated to you, the Courts have indicated that you have every right to represent yourself so I am going to find that you are knowingly and voluntarily waiving your right to counsel. I will allow you to represent yourself. I think this is

unequivocal. I think you know exactly what it is that you're doing. Am I correct in that assessment?

MR. MERINO: Yes, ma'am.

THE COURT: Any doubts whatsoever?

MR. MERINO: No.

THE COURT: No more questions that I can ask you? You're shaking your head, no.

MR. MERINO: No, not at this moment.

THE COURT: Do you want to ask the two attorneys standing next to you any questions?

MR. MERINO: No, no questions.

THE COURT: I will grant that request. And you may sign, if you will, the document that the Prosecutor's handing you. It's the document that he's just been over with you; if you want to read it over again, let me know. You're signing it.

. . . .

THE COURT: All right. Well, I don't know what else to ask, so I think you're set on what it is that you're going to do. Sir?

MR. SCHMIDT: And, your Honor, I would note for the record, my signature on the document that Mr. Merino has just signed indicates that I did review the document with him prior to going on the record this morning.

In light of the Court's resolution of Mr. Merino's motion to proceed pro se, Ms. Dillon and I would ask the Court to grant our motion to withdraw as counsel of record.

THE COURT: All right. Well, I am finding that the defendant is competent. I am signing this document granting his request, and I will sign those two documents as well.

On March 19, 2013, a jury convicted Merino as charged. Merino was sentenced to a total of 240 months in prison.

On appeal, Merino contends the trial court violated his right to counsel by accepting an invalid waiver of that right.

A criminal defendant is constitutionally guaranteed the right to assistance of counsel. U.S. CONST. amends. VI, XIV; Gideon v. Wainwright, 372 U.S. 335, 345, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). A criminal defendant also enjoys a correlative right to proceed without appointed counsel when he voluntarily and intelligently elects to do so. Faretta v. California, 422 U.S. 806, 836, 95 S. Ct.

2525, 45 L. Ed. 2d 562 (1975). To show the defendant validly waived his right to counsel, he or she should be made aware of the dangers and disadvantages of self-representation so that the record establishes that "'he knows what he is doing and his choice is made with eyes open.'" Faretta, 422 U.S. at 835, quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942).

A colloquy on the record is the preferred means of assuring that defendants understand the risks of self-representation. City of Bellevue v. Acrey, 103 Wn.2d 203, 211, 691 P.2d 957 (1984). At a minimum, the colloquy should consist of informing the defendant of the nature and classification of the charge, the maximum penalty upon conviction, and that technical rules exist which will bind the defendant in the presentation of his case. Acrey, 103 Wn.2d at 211.

Merino relies on State v. Chavis, 31 Wn. App. 784, 644 P.2d 1202 (1982). In Chavis, the defendant represented himself in his trial for third degree statutory rape. The reviewing court considered the following colloquy in determining whether Chavis validly waived his right to counsel:

> "THE COURT: . . . I also have an Order waiving your right to counsel. Do you understand, Mr. Chavis, that you do have a right to an attorney, is that correct?
> MR. CHAVIS: Yes.
> THE COURT: These rights, I take it, have been explained to you in some previous hearing have they not?
> MR. CHAVIS: Yes.
> THE COURT: Mr. Chavis, what is your experience, have you ever been a law student or anything like that?
> MR. CHAVIS: No, sir, I haven't.
> THE COURT: Have you ever conducted a trial on your own?
> MR. CHAVIS: Yes.

> THE COURT: You do understand you have a right to act as your attorney, but you are still bound to follow the same rules as the attorneys follow. You understand that?
> MR. CHAVIS: Yes, sir."

Chavis, 31 Wn. App. at 785-86. The court determined that "these single answer responses do not satisfy us that Mr. Chavis fully understood the 'dangers and disadvantages of self-representation.'" Chavis, 31 Wn. App. at 789, quoting Faretta, 422 U.S. at 835. Accordingly, the court concluded that Chavis had not validly waived his right to counsel and reversed.

This case is not like Chavis. There, the court asked the defendant five questions designed to elicit yes or no answers and then allowed him to proceed pro se. The questions focused on the defendant's legal experience. They did not adequately gauge the defendant's understanding of the risks of proceeding pro se. Here, the court and the prosecutor asked wide-ranging questions designed to allow the court to fully assess Merino's understanding of the risks of proceeding pro se. The mere fact that Merino answered some questions with "yes" or "no" does not render Chavis applicable.

The superior court, and the prosecutor at the court's direction, informed Merino of the nature and classification of each count he was charged with and the maximum penalty upon conviction for each count. They explained that he would be bound by the rules of court even if he did not understand them. The colloquy establishes that Merino was aware of the risks and disadvantages of self-representation. The colloquy satisfies the requirements articulated in Faretta and Acrey. We conclude that Merino validly waived his right to counsel.

9

Merino filed a pro se statement identifying three additional grounds for review pursuant to RAP 10.10.

First, Merino contends that the trial court erred by denying his pretrial request for standby counsel. But as the court stated before denying the request, Merino explicitly indicated that he understood that he would not be entitled to standby counsel if he proceeded pro se. We find no basis for review.

Second, he asserts that the trial court denied him access to the courts when he was given a laptop with only one hour of battery life to view discovery, limited his access to the law library, and caused him to have no contact with his investigator. Because this issue involves facts or evidence not in the record, it is not appropriate to raise it in a statement of additional grounds. State v. Calvin, 176 Wn. App. 1, 26, 302 P.3d 509, 316 P.3d 496 (2013).

Third, he contends that his right to a public trial was violated when the trial court closed the courtroom during voir dire to question potential juror numbers 10, 11, 12, and 55 individually. These four potential jurors spoke to the court outside the presence of other potential jurors but in open court. This record does not raise an issue of court closure.

Affirmed.

Becker, J.

WE CONCUR:

Leach, J.

Dwyer, J.